**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 8 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TINA JANELLE PETERSON; MARGIE
MARTINA PETERSON,

      Plaintiffs - Appellees,

v.

JEFF JENSEN; TOM TALLON; TY
BERGER,

      Defendants - Appellants,

  and

BRENT WARD; JOHN HOLDEN;
RODNEY STEVENS; KIM HARWARD,

      Defendants.

No. 02-4243

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 1:02-CV-38-PGC)**

---

Submitted on the briefs:[*]

Jesse C. Trentadue, Michael W. Homer, and Kathleen M. Liuzzi, Suitter Axland,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Salt Lake City, Utah, for Appellants.

D. Bruce Oliver, Salt Lake City, Utah, for Appellees.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

**TACHA**, Chief Circuit Judge.

---

Plaintiff-Appellees Tina Janelle Peterson and Margie Martina Peterson ("the Petersons") filed a civil rights action, pursuant to 42 U.S.C. § 1983, against Defendant-Appellants Jeff Jensen, Tom Tallon, and Ty Berger of the Davis County, Utah Sheriff's Department ("the officers").[1] The Petersons alleged that the officers violated their Fourth Amendment rights during the execution of a search warrant. The officers moved to dismiss the action, pursuant to Fed. R. Civ. P. 12(b)(6), asserting their entitlement to qualified immunity. The District Court denied the motion in part. We AFFIRM.

## I. BACKGROUND

This case comes to us from a motion to dismiss. As such, we adopt the facts as stated in the complaint. On March 31, 1999, one or more of the officers obtained a search warrant for one Kaysville, Utah residence. The allegations

---

[1] The Petersons also filed suit against four other defendants. Those claims are not at issue on this appeal.

-2-

forming the basis of this warrant related entirely to David Brown and Tarek Shejheur, who occupied the apartment at this address until early March 1999.

Unbeknownst to the officers, on April 4, 1999, the Petersons leased the apartment. The Petersons began moving into the apartment on the following day. During this process, the officers "charged into the residence with guns drawn and with aggressive abrasiveness and demanded all persons get down on the floor." "At the time of the search, four occupants were identified of whom none were to be David Brown and Tarek Shejheur." Moreover, a moving van sat in front of the apartment, and the Petersons had unloaded only a few boxes into the otherwise empty apartment. The officers were then instructed that, as of April 4, the Petersons had signed a lease and moved into the residence. Despite this identification and instruction, the officers continued to search the residence and detain the Petersons.

Following this incident, the Petersons filed the instant § 1983 suit. The officers then moved to dismiss. After considering these allegations, the District Court denied the officers' motion regarding their execution of the warrant, finding that the Petersons "alleged sufficient facts which, if proven, would support their claim that the warrant was improperly executed."

The officers filed timely notice of appeal. The only question before us is whether the District Court correctly denied the portion of the officers' Rule

12(b)(6) motion that claimed qualified immunity concerning their execution of the warrant.[2] We take jurisdiction pursuant to 28 U.S.C. § 1291. *See Mitchell v. Forsyth*, 472 U.S. 511, 526-27 & 530 (1985) (discussing the collateral order doctrine).

## II. STANDARD OF REVIEW

Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, we will also review this defense on a motion to dismiss. *Id.* at 526. Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment. *See Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992) ("A motion to dismiss for failure to state a claim is viewed with disfavor, and is rarely granted.") (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

[2] Because the Petersons did not file a cross-appeal on the additional issues decided by the District Court, we do not consider them here. *See Trigalet v. Young*, 54 F.3d 645, 647 n.3 (10th Cir. 1995) (finding that we cannot consider an issue decided for the appellant below, but not cross-appealed by the appellee).

claim which would entitle him to relief."[3]  *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001) (internal quotations omitted).  "We review the district court's denial of a motion to dismiss based on qualified immunity de novo."  *Butler v. Rio Rancho Pub. Sch. Bd. of Ed.*, 341 F.3d 1197, 1199 (10th Cir. 2003).

## III.  DISCUSSION

In resolving cases in which the defendants claim qualified immunity, we must first consider whether the plaintiff has alleged a deprivation of an actual constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If we find a violation, we must next determine whether "that right was clearly established at the time of the alleged violation."  *Id.*  A right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions.  *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999).  Under this standard,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) (citations omitted).

---

[3] Although we previously employed a heightened pleading standard in qualified immunity cases, *see Currier*, 242 F.3d at 912, we have abolished that requirement. *Id.* at 916-17.

The Petersons allege a deprivation of their Fourth Amendment rights to be free from unreasonable searches. More specifically, after claiming that the officers executed the search warrant as described above, the Petersons allege in their complaint that the officers violated their constitutional rights because:

16. At the time of the search, four occupants were identified of whom none were to be David Brown and Tarek Shejheur.

17. The Defendants were instructed that as of the day before, the Plaintiffs had moved into the residence having signed a lease agreement on April 4, 1999.

18. Despite identification and instruction, the defendants continued to detain Plaintiffs in order to search and interrogate.

These pleadings are susceptible to two interpretations. First, the pleadings could allege that the Petersons and their guests: (a) identified themselves as people other than David Brown and Tarek Shejheur, and (b) instructed the defendants that Mr. Brown and Mr. Shejheur no longer occupied the apartment. Despite this identification and instruction, the defendants continued their search and interrogation *until* independently confirming this information. Second, one could construe these statements to allege that the defendants continued to search the premises *after* independently verifying that David Brown and Tarek Shejheur had moved out of the apartment.[4]

---

[4] The defendants argue against this interpretation, relying in part on documents such as the police report to assert that the officers ceased their search immediately
(continued...)

Reading the complaint liberally to include this second interpretation, the plaintiffs allege a constitutional violation. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (holding that when reviewing Rule 12(b)(6) motions we view the complaint in the light most favorable to the non-moving party). Given the validity of the warrant, the officers permissibly entered the apartment. *See Maryland v. Garrison*, 480 U.S. 79, 87 (1987). Nevertheless, "the purposes justifying a police search strictly limit the permissible extent of the search[.]" *Id.* Here, the purpose of the search was to examine the residence, the belongings, and the persons of David Brown and Tarek Shejheur. Because Mr. Brown and Mr. Shejheur no longer lived there, searching the apartment did not fulfill the purpose of the warrant.

Nonetheless, "the [Supreme] Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* Thus, the search became unconstitutional only if it continued after the defendants realized,

---

[4](...continued)
upon independently verifying these facts. When evaluating a Rule 12(b)(6) motion, however, we cannot consider information outside the complaint without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *David v. City & County of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) ("[A] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) cannot be converted into a summary judgment motion without notice and an opportunity for the parties to present relevant evidence."). Because no such notice and opportunity exist here, we will not consider on appeal any evidence outside the complaint.

or reasonably should have realized, that the people named in the warrant as occupants of the apartment no longer resided there. *See id.* at 88 ("[T]he validity of the search of respondent's apartment . . . depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable."). Because the Petersons claim that the defendants continued their search despite such knowledge, they allege a constitutional violation.

As noted above, the law in this area was well-established at the time of the search in question. *See Garrison*, 480 U.S. at 87 (finding that officers "were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant."); *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) ("[A]ny search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity.").

## IV. CONCLUSION

Because the Petersons allege that the defendants continued to search even after independently verifying that Mr. Brown and Mr. Shejheur no longer occupied the apartment, the search as alleged violated clearly established constitutional law. Therefore, we find that the officers are not entitled to

qualified immunity at this stage of the proceedings and AFFIRM the ruling of the

District Court.[5]

---

[5] Because we affirm the decision of the District Court, we need not reach the other issues that the Petersons raise.